UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GERALD JOSEPH LOVOI,<br><br>    Plaintiff,<br><br>    v.<br><br>CHESAPEAKE ENERGY CORPORATION, DOMENIC J. DELL'OSSO, JR., MICHAEL A. WICHTERICH, TIMOTHY S. DUNCAN, BENJAMIN C. DUSTER, IV, SARAH A. EMERSON, MATTHEW M. GALLAGHER, and BRIAN STECK,<br><br>    Defendants. | Civil Action No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMAND** |

Plaintiff Gerald Joseph Lovoi ("Plaintiff") alleges the following upon information and belief, including investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against Chesapeake Energy Corporation ("Chesapeake Energy" or the "Company") and Chesapeake Energy's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of the Board's attempt to acquire Southwestern Energy Company ("Southwestern Energy").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading registration statement (the "S-4") to be filed with the Securities and Exchange Commission ("SEC") on February 29, 2024. The S-4 recommends that Chesapeake Energy stockholders vote in favor of a proposed transaction (the "Proposed

1

Transaction") whereby Chesapeake Energy acquires Southwestern Energy. The Proposed Transaction was first disclosed on January 11, 2024, when Chesapeake Energy and Southwestern Energy announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which Southwestern Energy stockholders will receive 0.0867 shares of Chesapeake Energy common stock for each share of Southwestern Energy common stock that they hold (the "Merger Consideration"). Chesapeake Energy will issue more than 96.3 million shares of common stock to effectuate the Proposed Transaction (the "Stock Issuance"). The deal is valued at approximately $7.4 billion and is expected to close in the second quarter of 2024.

3. The S-4 is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the S-4 contains materially incomplete and misleading information concerning the financial projections prepared by Chesapeake Energy management, as well as the financial analyses conducted by Evercore Group L.L.C. ("Evercore"), Chesapeake Energy's financial advisor.

4. For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Stock Issuance and/or the Proposed Transaction, including filing an amendment to the S-4 with the SEC or otherwise causing an amendment to the S-4 to be disseminated to Chesapeake Energy's stockholders, unless and until the material information discussed below is included in any such amendment or otherwise disseminated to Chesapeake Energy's stockholders. In the event the Stock Issuance and/or the Proposed Transaction are consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

## PARTIES

5. Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Chesapeake Energy.

6. Defendant Chesapeake Energy is a corporation organized and existing under the laws of the State of Oklahoma. The Company's principal executive offices are located at 6100 North Western Avenue, Oklahoma City, Oklahoma 73118. Chesapeake Energy common stock trades on NASDAQ under the ticker symbol "CHK."

7. Defendant Domenic J. Dell'Osso, Jr. has been President, Chief Executive Officer, and a director of the Company since October 2021. Defendant Dell'Osso previously served as Executive Vice President and Chief Financial Officer of the Company, from 2010 through 2021.

8. Defendant Michael A. Wichterich has been a director of the Company since 2021. Defendant Wichterich served as Interim CEO of Chesapeake Energy from April 2021 to October 2021, and as Executive Chairman from October 2021 to December 2022.

9. Defendant Timothy S. Duncan has been a director of the Company since 2021.

10. Defendant Benjamin C. Duster, IV has been a director of the Company since 2021.

11. Defendant Sarah A. Emerson has been a director of the Company since 2021.

12. Defendant Matthew M. Gallagher has been a director of the Company since 2021.

13. Defendant Brian Steck has been a director of the Company since 2021.

14. Defendants Dell'Osso, Wichterich, Duncan, Duster, Emerson, Gallager, and Steck are collectively referred to herein as the "Board" or "Individual Defendants."

15. Nonparty Southwestern Energy is a Delaware corporation with its principal executive offices located at 10000 Energy Drive, Spring, Texas 77389. Southwestern Energy common stock trades on NYSE under the ticker symbol "SWN."

**JURISDICTION AND VENUE**

16. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

17. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

18. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because a significant amount of the conduct at issue took place and had an effect in this District.

**FURTHER SUBSTANTIVE ALLEGATIONS**

**A. Background of the Company and the Proposed Transaction**

19. Chesapeake Energy explores and develops properties in Pennsylvania and Louisiana to produce natural gas and oil. As of December 31, 2023, Chesapeake Energy held a working interest in 3,300 productive gas wells, of which 2,800 were operated by the Company. More than 25% of Chesapeake Energy's revenues for 2023 were generated from sales to Valero Energy Corporation and Shell Energy North America.

20. On January 10, 2024, the Company entered into the Merger Agreement with Southwestern Energy.

21. According to the press release issued on January 11, 2024, announcing the Proposed Transaction:

**CHESAPEAKE ENERGY CORPORATION AND SOUTHWESTERN ENERGY TO COMBINE TO ACCELERATE AMERICA'S ENERGY REACH**

**OKLAHOMA CITY / SPRING, Texas – January 11, 2024** – Chesapeake Energy Corporation (NASDAQ:CHK) and Southwestern Energy Company (NYSE:SWN) today announced that they have entered into an agreement to merge in an all-stock transaction valued at $7.4 billion, or $6.69 per share, based on Chesapeake's closing price on January 10, 2024. Under the terms of the agreement, Southwestern shareholders will receive 0.0867 shares of Chesapeake common stock for each share of Southwestern common stock outstanding at closing.

The strategic combination will create a premier energy company underpinned by a leading natural gas portfolio adjacent to the highest demand markets, premium inventory, resilient free cash flow, and an Investment Grade quality balance sheet. The combined company, which will assume a new name at closing, will be uniquely positioned to deliver affordable, lower carbon energy to meet growing domestic and international demand with significant, sustainable cash returns to shareholders through cycles.

**Transaction Highlights:**

- **Establishes industry's premier natural gas portfolio:** By combining high quality, large scale acreage in Appalachia and Haynesville, the pro forma company has current net production of approximately 7.9 Bcfe/d(1) with more than 5,000 gross locations and 15 years of inventory.
    (1) Third quarter 2023 actual production for CHK and SWN from public filings; Excludes Eagle Ford

- **Annual operational and overhead synergies of approximately $400 million:** Identified synergies will enhance shareholder value through improved capital efficiencies and operating margins driven by longer laterals, lower drilling and completion costs, G&A reductions, and the utilization of shared operational infrastructure.

- **Accretive to all key financial metrics:** The combination is expected to be immediately accretive to all key per share financial metrics including operating cash flow, free cash flow, cash dividends, and net asset value, as well as ROCE.

- **Creates global platform to expand marketing and trading business, reaching more markets, mitigating price volatility and increasing revenue:** In order to maximize value of the combined company's scale of production, Investment Grade quality capital structure and 100% certified Responsibly Sourced Gas, the company will build a global marketing and

5

trading presence in Houston to supply lower-cost, lower carbon energy to meet increasing domestic and international LNG demand.

- **Increases shareholder value through synergy enhanced, best-in-class return framework:** Through Chesapeake's existing shareholder return framework, the combined company expects an approximate 20% improvement in dividends per share over five years due to significant synergies and greater pro forma free cash flow generation.

- **Investment Grade quality capital structure:** The combined company remains committed to maintaining a net leverage ratio below one times and Investment Grade metrics resulting in a lower cost of capital and improved credit profile. These attributes will increase access to and returns from marketing and LNG opportunities.

- **Sustainability leadership:** The combined company will maintain its low natural gas emissions profile, commitment to achieving net zero Scope 1 and 2 GHG emissions by 2035, transparent disclosure on measurable targets, investment in low-carbon solutions, and social and governance excellence.

"This powerful combination redefines the natural gas producer, forming the first U.S. based independent that can truly compete on an international scale. The union creates a deep inventory of advantaged assets adjacent to high demand markets, allowing for the application of proven operational practices and the power of an Investment Grade quality balance sheet to drive significant synergies benefiting energy consumers and shareholders alike," said Nick Dell'Osso, Chesapeake's President and Chief Executive Officer. "The world is short energy and demand for our products is growing, both in the U.S. and overseas. We will be positioned to deliver more natural gas at a lower cost, accelerating America's energy reach and fueling a more affordable, reliable, and lower carbon future. I look forward to leading the talented workforce of the combined organization to accelerate the long-term value opportunity for our shareholders, employees, and all stakeholders."

Southwestern President and Chief Executive Officer Bill Way added, "I want to thank the entire Southwestern team for positioning the company to be part of this transformational combination. Together, Southwestern and Chesapeake can drive improved margins and returns from our highly complementary portfolios through enhanced scale, capital allocation flexibility, and access to premium markets to supply growing global natural gas demand. Most importantly, both sets of shareholders are able to participate in the substantial value creation and future growth opportunities of the combined company, with one of the top shareholder return frameworks in the sector."

**Transaction Details:**

Under the terms of the agreement, Southwestern shareholders will receive a fixed exchange ratio of 0.0867 shares of Chesapeake common stock for each share of Southwestern common stock owned at closing. At this exchange ratio and the respective share prices on January 10, 2024, the combined company would have an enterprise value of approximately $24 billion. Pro forma for the transaction, Chesapeake shareholders will own approximately 60% and Southwestern shareholders will own approximately 40% of the combined company, on a fully diluted basis.

The combination has been approved by the boards of directors of both companies. The transaction, which is subject to customary closing conditions, including approvals by Chesapeake and Southwestern shareholders and regulatory clearances, is targeted to close in the second quarter of 2024.

B. **The Materially Incomplete and Misleading S-4**

22. On February 29, 2024, Defendants filed the S-4 with the SEC. The purpose of the S-4 is, *inter alia*, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to vote in favor of the Stock Issuance and/or the Proposed Transaction. However, significant and material facts were not provided to Plaintiff. Without such information, Plaintiff cannot make a fully informed decision concerning whether to vote in favor of the Stock Issuance and/or the Proposed Transaction.

*Materially Incomplete and Misleading Disclosures Concerning the Management-Prepared Financial Forecasts*

23. The S-4 discloses management-prepared financial projections for the Company which are materially misleading. The S-4 indicates that in connection with the rendering of Evercore's fairness opinion, Evercore reviewed "certain internal projected financial and reserves data relating to" Southwestern Energy and Chesapeake Energy, which were "furnished to Evercore by the management of Chesapeake." Accordingly, the S-4 should have, but failed to, provide certain information in the projections that Chesapeake Energy's management provided to the Board and Evercore.

7

24. Notably, the S-4 fails to disclose the line items underlying the calculation of EBITDA in the *Southwestern Forecasted Financial Information for Chesapeake* and *Southwestern Forecasted Financial Information for Southwestern*. The S-4 also fails to disclose the "other items" used to calculate Free Cash Flow as provided in the *Southwestern Forecasted Financial Information for Southwestern* and *Southwestern Pro Forma Forecasted Financial Information*. In addition, the S-4 fails to disclose the line items underlying the calculation of EBITDAX in the *Chesapeake Forecasted Financial Information for Chesapeake* and *Chesapeake Forecasted Financial Information for Southwestern.* This omitted information is necessary for Plaintiff to make an informed decision on whether to vote in favor of the Stock Issuance and/or the Proposed Transaction.

### *Materially Incomplete and Misleading Disclosures Concerning Evercore's Financial Analyses*

25. With respect to the *Net Asset Value Analysis* for Chesapeake Energy*,* the S-4 fails to disclose the inputs and assumptions underlying the selection of the discount rates of 8% to 25%. The S-4 also fails to disclose the derived total reserve values that were calculated, as well as:

a) the present value of capital expenditures;

b) the present value of the future estimated effects of Chesapeake Energy's hedging;

c) the present value of the general and administrative expenses;

d) the present value of cash taxes;

e) the net value of Chesapeake Energy's acquisitions and divestitures;

f) the value of Chesapeake Energy's acreage not developed;

g) the value to Chesapeake Energy from its liquefied natural gas deals with Delfin LNG LLC and Gunvor Group Ltd;

h) Chesapeake Energy's estimated pro forma net debt and cash as of September 30, 2023; and

8

    i)   the number of fully diluted outstanding shares of Chesapeake Energy common stock as of January 5, 2024.

The S-4 further fails to disclose the discount rates applied to the present value of cash taxes, as well as the inputs and assumptions underlying the selection of said discount rates. In addition, the S-4 fails to disclose the adjustments for certain items occurring subsequent to September 30, 2023, including asset sales, share repurchases and dividends, as utilized to determine the estimated pro forma net debt and cash as of September 30, 2023.

    26.    With respect to the *Net Asset Value Analysis* for Southwestern Energy, the S-4 fails to disclose the inputs and assumptions underlying the selection of the discount rates of 8% to 25%. The S-4 also fails to disclose the derived total reserve values that were calculated, as well as:

a)   the present value of capital expenditures;

b)   the present value of the future estimated effects of Southwestern Energy's hedging;

c)   the present value of the general and administrative expenses;

d)   the present value of cash taxes;

e)   Southwestern Energy's estimated net debt and cash as of September 30, 2023; and

f)   the number of fully diluted outstanding shares of Southwestern Energy common stock as of January 5, 2024.

The S-4 further fails to disclose the discount rates applied to the present value of cash taxes, as well as the inputs and assumptions underlying the selection of said discount rates. In addition, the S-4 fails to disclose the inputs and assumptions underlying the selection of a 12.6% discount rate as applied to the Chesapeake Energy Forecast Synergies.

    27.    With respect to the *Discounted Cash Flow Analysis* for Chesapeake Energy, the S-4 fails to disclose the calculated terminal values and the implied enterprise value reference ranges

for Chesapeake Energy. The S-4 also fails to disclose the inputs and assumptions underlying the estimated weighted average cost of capital utilized to determine the selected discount rates. Furthermore, the S-4 fails to disclose the estimated pro forma net debt and cash as of September 30, 2023, and the number of fully diluted outstanding shares of Chesapeake Energy common stock as of January 5, 2024, as utilized for the analysis.

28. With respect to the *Discounted Cash Flow Analysis* for Southwestern Energy, the S-4 fails to disclose the calculated terminal values and the implied enterprise value reference ranges for Southwestern Energy. The S-4 also fails to disclose the inputs and assumptions underlying the estimated weighted average cost of capital utilized to determine the selected discount rates. Furthermore, the S-4 fails to disclose Southwestern Energy's estimated net debt and cash as of September 30, 2023, and the number of fully diluted outstanding shares of Southwestern Energy common stock as of January 5, 2024, as utilized for the analysis.

29. With respect to the *Selected Publicly Traded Companies Analysis* for Chesapeake Energy, the S-4 fails to disclose the multiples for TEV / EBITDAX (2024E), TEV / EBITDAX (2025E), Equity Value / CFFO (2024E), and Equity Value / CFFO (2025E) for each selected company. The S-4 also fails to disclose the equity research analyst consensus estimates utilized to select the applied TEV / EBITDAX multiple reference ranges and the Equity Value / CFFO multiple reference ranges. Furthermore, the S-4 fails to disclose Chesapeake Energy's estimated pro forma net debt and cash as of September 30, 2023 and the number of fully diluted outstanding shares of Chesapeake Energy common stock as of January 5, 2024, as utilized for the analysis.

30. With respect to the *Selected Publicly Traded Companies Analysis* for Southwestern Energy, the S-4 fails to disclose the multiples for TEV / EBITDAX (2024E), TEV / EBITDAX (2025E), Equity Value / CFFO (2024E), and Equity Value / CFFO (2025E) for each selected

company. The S-4 also fails to disclose the equity research analyst consensus estimates utilized to select the applied TEV / EBITDAX multiple reference ranges and the Equity Value / CFFO multiple reference ranges. Furthermore, the S-4 fails to disclose Southwestern Energy's estimated net debt and cash as of September 30, 2023, and the number of fully diluted outstanding shares of Southwestern Energy common stock as of January 5, 2024, as utilized for the analysis.

31. With respect to the *Equity Research Analysts' Price Targets Analysis*, the S-4 fails to disclose the number of share price targets considered, as well as the dates and values for each target, as utilized in the analysis.

32. The S-4 notes that Chesapeake Energy agreed to pay "an additional discretionary fee of up to $5 million" to Evercore "in connection with" the closing of the Proposed Transaction. That $5 million is in addition to the $20 million that the Company agreed to pay Evercore for rendering its fairness opinion. Yet the S-4 is silent as to the terms of payment for the discretionary fee, including any factors or contingencies that must be met for the payment to be made.

33. Evercore provided valuation analyses to the Board throughout the process, yet such analyses were not disclosed in the S-4. This includes the preliminary financial analyses provided to the Board on October 9, 2023, the updates to those analyses as provided to the Board on November 8, 2023, and the preliminary financial analyses provided to the Board on January 9, 2024.

34. This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff was not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. And without all material information, Plaintiff is unable to make a fully informed decision in connection with the Stock Issuance and/or the Proposed

Transaction and faces irreparable harm, warranting the injunctive relief sought herein.

35. In addition, the Individual Defendants knew or recklessly disregarded that the S-4 omits the material information concerning the Stock Issuance and/or the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

36. Specifically, the Individual Defendants undoubtedly reviewed the contents of the S-4 before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the S-4 omits the material information referenced above and contains the incomplete and misleading information referenced above.

37. Further, the S-4 indicates that on January 10, 2024, Evercore reviewed with the Board its financial analysis of the Merger Consideration and delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion of the same date, to the effect that the Merger Consideration was fair, from a financial point of view to Chesapeake Energy. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning Evercore's financial analyses which has been omitted from the S-4, and thus knew or should have known that such information has been omitted.

38. Plaintiff is immediately threatened by the wrongs complained of herein and lacks an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that he will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

39. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40. Defendants have filed the S-4 with the SEC with the intention of soliciting Chesapeake Energy stockholder support for the Stock Issuance and/or the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the S-4, which fails to provide the material information referenced above.

41. In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Chesapeake Energy, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

42. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

43. Specifically, and as detailed above, the S-4 violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) management's financial projections; and (ii) the value of Chesapeake Energy shares and the financial analyses performed by Evercore in support of its fairness opinion.

44. Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the S-4 is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Stock Issuance and/or the Proposed Transaction; indeed, the S-4 states that

Evercore reviewed and discussed its financial analyses with the Board during various meetings including on January 10, 2024, and further states that the Board considered Evercore's financial analyses and fairness opinion in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the S-4, rendering the sections of the S-4 identified above to be materially incomplete and misleading.

45. The misrepresentations and omissions in the S-4 are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Stock Issuance and the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

46. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47. The Individual Defendants acted as controlling persons of Chesapeake Energy within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Chesapeake Energy and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the S-4 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are

materially incomplete and misleading.

48. Each of the Individual Defendants was provided with or had unlimited access to copies of the S-4 and other statements alleged by Plaintiff to be misleading prior to the time the S-4 was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The S-4 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Stock Issuance and/or the Proposed Transaction. They were, thus, directly involved in the making of the S-4.

50. In addition, as the S-4 sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The S-4 purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate

result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing an amendment to the S-4 with the SEC or otherwise disseminating an amendment to the S-4 to Chesapeake Energy stockholders unless and until Defendants agree to include the material information identified above in any such amendment;

B.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Stock Issuance and/or the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the S-4;

C.      In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

D.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

E.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 13, 2024                    **ROWLEY LAW PLLC**

*S/ Shane T. Rowley*
Shane T. Rowley (SR-0740)
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Tel: (914) 400-1920
Fax: (914) 301-3514
Email: srowley@rowleylawpllc.com
Email: drl@rowleylawpllc.com

*Attorneys for Plaintiff*